UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSERVATION CONGRESS, a non-profit organization,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES FOREST SERVICE,<br><br>    Defendant. | No. 2:14-CV-02228-GEB-AC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL AND GRANTING DEFENDANT'S MOTION TO STRIKE** |

Plaintiff seeks to stay implementation of the Porcupine Vegetation and Road Management Project ("the Project") in the Shasta-Trinity National Forest ("the Forest"), pending the outcome of its appeal of an order granting Defendant's motion for summary judgment. Defendant opposes the motion and moves to strike evidence Plaintiff submitted in support of its stay motion.

**I. MOTION TO STRIKE EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S STAY MOTION**

Defendant moves to strike "(1) paragraphs 7-9 of the Boggs Declaration, (2) the impermissible lay opinion regarding landscape fragmentation and impacts to owl habitat from paragraph 10 of the Boggs Declaration; (3) both exhibits to the Boggs

1

Declaration; and (4) the Declaration of Tonja Chi in its entirety." (Def. MTS Reply 1:26-28, ECF No. 60.) Defendant argues the evidence should be stricken since "Plaintiff [impermissibly] seeks, under the guise of 'harm declarations,' to attack the merits of the . . . Project decision, . . . to offer untimely expert critiques of the merits of the . . . Project decision, and to submit inadmissible post-decision documents." (Def. MTS 1:19-25, ECF No. 52.)

Plaintiff responds that it "submitted both declarations and accompanying exhibits to demonstrate [that it is likely to suffer irreparable harm in the absence of an injunction,]" and "only cited to these declarations in portions of [its motion] that addressed irreparable harm," and therefore, "the declarations are properly before the Court." (Pl. Opp'n MTS 1:5-10, ECF No. 57.)

Defendant replies that it "does not dispute that extra-record declaration testimony may be used to demonstrate [the] irreparable harm needed to justify injunctive relief," but "[t]he defect in the declarations submitted by Plaintiff . . . is that[,] regardless of where they are cited in Plaintiff's briefing[,] . . . [they] plainly attempt a new attack on the merits of the [Project] decision." (Def. MTS Reply 1:11-16, ECF No. 60.) Specifically, Defendant argues paragraphs 7-9 of the Boggs declaration contain Boggs' opinion that Defendant "failed to appropriately consider the threats posed by the barred owl and failed to comply with the U.S. Fish and Wildfire Service's 2011 Revised Recovery Plan for the northern spotted owl," which is "not directed toward establishing harms, but instead [is] an

2

attempt to impute 'the correctness of the agency's decision." (Def. MTS 3:9-14.) Defendant argues paragraph 10 of the Boggs declaration includes "an impermissible attempt to proffer expert testimony and new evidence in support of Plaintiff's . . . [underlying] claim, alleging [that] the owl habitat in the Project area is 'highly fragmented' and 'impair[s] connectivity,'" and that the two exhibits attached to the Boggs declaration, a google earth image of the Forest (Ex. A), and Defendant's March 31, 2014 Annual Progress Report (Ex. B), are offered to attack the merits of Defendant's decision to approve the Project. (Def. MTS 5:6-8; 5:9-11; 4:11-13.) Defendant also argues that through the Chi declaration, Plaintiff "asks this Court to revisit the merits of the conclusions reached by [Defendant] with regard to the impacts of the Project on the northern spotted owl," since Chi "devotes the majority of her declaration to developing an argument that [Defendant] failed to take adequate account of the competitive pressures the barred owl places on the spotted owl." (Def. Mot. 5:25-26; 6:1-4.)

"A plaintiff seeking a [stay pending appeal] must establish that [1] [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008)) The Ninth Circuit has repeatedly considered declarations in its analysis of whether the plaintiff has demonstrated the likelihood that it will suffer irreparable harm without a stay. See e.g. Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir.

3

2009) (relying on declarations to show harm prong of the injunction analysis); City of Sausalito v. O'Neil, 386 F.3d 1186, 1198 (9th Cir. 2004) (same); Idaho Watersheds Project v. Hahn, 307 F.3d 815, 833-34 (9th Cir. 2002) abrogated on other grounds by Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010) (same). However, declarations may only be considered to supplement the administrative record to show the movant's likelihood of the success on the merits in four circumstances:

> (1) if necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record,' [] (3) "when supplementing the record is necessary to explain technical terms of complex subject matter," . . . . [or] [4] "when plaintiffs make a showing of agency bad faith."

S.W. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting Inland Empire Pub. Lands Council v. Glickman, 88 F.3d 697, 703-04 (9th Cir. 1996)). Regardless, it is the movant's burden to show the declarations should be considered. Animal Def. Council v. Hodel, 840 F.2d 1432, 1437 (9th Cir. 1988) (denying movants argument that district court should have gone beyond the record since the movant "makes no showing that the district court needed to go outside the administrative record.").

Plaintiff does not argue that the relevant portions of the Boggs declaration and the Chi declaration are admissible to show its likelihood of success on the merits of its underlying claims and does not cite the declarations in the portion of its motion concerning likelihood of success on the merits. However, the contents of the declarations evince that they are an

4

impermissible attempt to demonstrate Plaintiff is likely to succeed on the merits of its underlying claims since their content challenges Defendant's decision to approve the Project, which is the argument Plaintiff advances in its underlying claims.

Paragraphs 7-9 of the Boggs declaration offer opinions criticizing Defendant's approval of the Project for "fail[ing] to utilize diameter limits," "claim[ing] there have not been barred owls identified in the Project area," "rely[ing] on outdated methodology," and "refus[ing] to utilize the best available scientific survey protocol;" Exhibit B attached to the Boggs Declaration, Defendant's March 31, 2014 Annual Progress Report, cited in paragraph 8, is offered to support this impermissible argument. (Boggs Decl. ¶¶ 7-9, ECF No. 43.) Therefore, Defendant's motion to strike paragraphs 7-9 of the Boggs declaration and Exhibit B attached to the declaration is granted.

Defendant has not identified which portion of paragraph 10 of the Boggs Declaration it seeks to strike beyond its reference to the phrases "highly fragmented," and "impair[s] connectivity," which appear in a sentence where Boggs declares, "This portion of designated critical habitat in the sale is the only remaining good habitat in the area as it is entirely surrounded by logging units that have resulted in a highly fragmented landscape impairing connectivity, as is evidenced in a google earth image." (Def. MTS 5:8; Boggs Decl. ¶ 10.) This sentence, and google earth image it references, attached as Exhibit A to the Boggs declaration, are part of Plaintiff's impermissible attempt to use extrinsic evidence to attack the

5

merits of the Defendant's decision to approve the Project. Therefore, Defendant's motion is granted and the portion of paragraph 10 of the Boggs declaration on page 4 lines 1-4 as well as Exhibit A attached to the Boggs declaration are stricken.

Chi declares in her declaration that the "Project will result in harm to the [northern spotted owl]" and directly challenges Defendant's decision to approve the Project, stating "[i]n my professional opinion, the emphasis on potential threats to the [northern spotted owl] within the 2011 Revised Recovery Plan understates the true magnitude of threat by the barred owl on the [northern spotted owl] and overstates the threat by wildfire to [northern spotted owl]." (Chi Declaration ¶¶ 10, 19, ECF No. 44.) Therefore, Defendant's motion to strike the Chi declaration is granted.

## II. MOTION FOR STAY PEDING APPEAL

A motion to stay pending appeal is reviewed under the same standard as a preliminary injunction. Human Soc. of U.S. v. Gutierrez, 558 F.3d 896, 897 (9th Cir. 2009) (citing Winter, 555 U.S. at 20). A plaintiff seeking a [stay pending appeal] must establish, inter alia, "that an injunction is in the public interest." Winter, 555 U.S. at 20 (emphasis added). A court "must consider only the portion of the harm that would occur while the [stay] is in place." League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 765 (9th Cir. 2014).

### A. Public Interest

Plaintiff argues a stay "would . . . protect the public's interest in preventing federal agencies from acting in a

manner inconsistent with applicable law" and "[t]he public's interest in ensuring that federal agencies manage public lands in compliance with environmental laws 'invokes a public interest of the highest order.'" (Pl. Mot. 7:26-27; 8:3-5, ECF No. 42.)

Defendant responds that "Plaintiff has not met its burden of showing that . . . the public interest favor[s] an injunction" since the Project will manage the risk of severe wildfire, which threatens human life, property, and the Forest's health. (Def. Opp'n 12:11-18, ECF No. 53.) Defendant supports its position citing to the Project Administrative Record ("PAR"), where it states the Project will reduce the risk of severe wildfires by thinning dead trees that would otherwise allow the Forest to burn with an uncharacteristic severity. See PAR 323 (stating that the Project is designed to "reduce the risk of uncharacteristic fire effects"); PAR 12 (stating that if the Project does not proceed, "[f]orest stands would be left in an overly dense, stressed state leaving them less resilient to . . . wildfire"); PAR 126 ("The treatment areas are highly susceptible to high fire intensity torching . . . under 90th percentile weather conditions."). Defendant also cites to the Forest Supervisor Myers' Declaration where he declares that the Project area "has been classified as in 'extreme' drought," and the "[e]xtreme drought is expected to have several consequences with respect to . . . the Project" since the area "typically receives relatively intense lightning activity . . . and ranks high in terms of acres burned in historical fires." (Myers Decl. ¶¶ 9, 10, ECF No. 53-1.) Myers further declares:

extremely dry local conditions have already

> manifested in unusual pre-fire season wildfires, [including] . . . . [t]he Stephens fire[, that] burned 209 acres approximately 14 miles from the . . . [P]roject area in late February . . . . The Stephens fire, which occurred in an area typically under several feet of snow in February, is unusual and is an indicator of the high risk for wildfire severity that exists and is worsening in the vicinity [of the Project area.]

(Myers Decl. ¶ 11.) Myers also declares that lightning strikes caused several fires in the forest on April 21. (Id.) Myers declares:

> the high fire hazard conditions anticipated this summer will likely require greater constraints on operations [to implement the Project], including restricting operations to the cooler parts of the morning and evening and even halting operations altogether if the risk of a fire is too high. Consequently, it is beneficial to have the operators complete as much of the Project as soon as possible while conditions are favorable.

(Myers Decl. ¶ 15.)

Plaintiff replies that Defendant's evidence does not show that staying the Project "will result in imminent harm from . . . wildfire." (Pl. Reply 5:19-21, ECF No. 58.)

The evidence evinces that a stay poses the risk of uncharacteristically severe wildfires in the Forest, that the Project reduces this risk, and that even a short delay in implementing the Project could interfere with the public's interest in preventing wildfire. Plaintiff has not countered this evidence. Therefore, Plaintiff's motion is denied. See e.g. Wildwest Inst. v. Bull, 472 F.3d 587, 592 (weighing "the possibility of a severe wildfire in the area" when assessing the public interest in an injunction).

///

**III. CONCLUSION**

For the stated reasons, Defendant's motion to strike is GRANTED and Plaintiff's motion for a stay pending appeal is DENIED.

Dated: May 29, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge